**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gordon Powell,<br><br>        Plaintiff,<br><br>v.<br><br>Tucson Medical Center,<br><br>        Defendant. | No. CV-17-00543-TUC-JR<br><br>**ORDER** |

Pending before the Court is Defendant TMC's Renewed Partial Motion to Dismiss (Doc. 19). Plaintiff Powell filed a Response (Doc. 25) and TMC filed a Reply (Doc. 31). For the reasons explained below, the Motion to Dismiss is granted and Plaintiff is granted leave to amend.

**I.  Motion to Dismiss Standard**

For the purposes of deciding a motion to dismiss, the court assumes that the facts alleged in the complaint are true. *See Ashcroft v. Iqbal*¸ 556 U.S. 662, 679 (2009). However, since the Supreme Court's decisions in *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's factual allegations in the complaint "must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1134-35

(9th Cir. 2014) (quoting *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1107 (9th Cir. 2013). To meet the plausibility requirement, the complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Levitt*, 765 F.3d 1134-35 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678.

With the guidance of *Iqbal* and *Twombly*, the Ninth Circuit has developed a two-step process for evaluating complaints: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1134-35 (9th Cir. 2014). Notably, "[t]he plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## II. Factual Allegations in the Amended Complaint

In the First Amended Complaint ("FAC"), Plaintiff Powell asserts two claims. His First Cause of Action ("FCA") alleges termination in violation of the Americans with Disabilities Act ("ADA") because he was terminated based on his disability and in retaliation for having opposed discrimination. In his Second Cause of Action ("SCA"), Powell alleges that he was wrongfully terminated because he exercised his right to file a

workers' compensation claim. Defendant TMC seeks the dismissal of the SCA only.

The facts alleged in support of the SCA are as follows: Powell began his employment with TMC in 1999 through 2010 through a contract support services management company called Med-Dyn and later Crothal. FAC, ¶ 11. In 2010, TMC hired Powell as the Environmental Services Director. FAC, ¶ 12. Throughout his employment at TMC, Mr. Powell's performance always met or exceeded the expectations of his supervisors. FAC, ¶ 13. On February 17, 2015, Powell suffered a shoulder injury while at work at TMC. FAC, ¶ 14; TMC Exhibit 3 (Employer's Report of Industrial Injury).[1] As a result of his work-related injury, Powell exercised his right to file a workers' compensation claim. FAC, ¶ 15. Powell was treated for his injury with medication for approximately four months without success. Despite his injury, Powell continued performing the duties of his position in a satisfactory manner. FAC, ¶ 16.

In May of 2015, Karen Mlawsky left Banner Health and joined TMC's management as Chief Operations Officer and that same month became Powell's immediate supervisor. FAC, ¶¶ 17, 18. At the end of 2015, Mlawsky evaluated Powell's performance and described him as a "strong performer with significant leadership potential." FAC, ¶ 19.

In July 2016, Powell notified Mlawsky he suffered a work related injury in 2015 and need to take leave for surgery related to his work-related injury. FAC, ¶ 20. On July

---

[1] Defendant TMC requests that the Court take judicial notice of the three exhibits attached to the Renewed Partial Motion to Dismiss: Plaintiff's original Charge of Discrimination filed with the Arizona Civil Rights Division ("ACRD") on May 5, 2017 (Ex. 1); Plaintiff's Amended Charge of Discrimination filed with the ACRD in August 2017 (Ex. 2); and TMC's Employer's Report of Industrial Injury submitted to the Industrial Commission of Arizona on February 25, 2015 (Ex. 3). Plaintiff Powell has not objected to the consideration of the exhibits or their contents.

21, 2016, Powell took medical leave for his surgery and returned on July 28, 2016. FAC, ¶ 21. Upon his return to work, Powell noticed that Mlawsky's attitude toward him had changed dramatically. FAC, ¶22.

On August 16, 2016, Mlawsky called Powell into a meeting that included the Vice-President of Human Resources, Alex Horvath. During the meeting, Mlawsky yelled at Powell and criticized his body language. Powell did not understand to what Mlawsky was referring and told her that he was in some physical discomfort after his recent surgery. FAC, ¶ 23. Then, on August 24, 2016, Powell told HR Vice-President Horvath that he felt harassed by Mlawsky's comments on his alleged "body language" and the fact that he was in pain after surgery. Powell told Horvath that he felt she was making fun of him because of his pain relating to his shoulder surgery. FAC, ¶ 24.

In November 2016, Mlawsky notified Powell that he would no longer be reporting to her. Powell was then required to report to another TMC Director who had been with TMC for less than five years. FAC ¶ 25.

On December 19, 2016, TMC terminated Powell's employment. During his termination meeting, Mlawsky informed Powell that his termination was solely her decision. FAC, ¶ 26. In his SCA, Powell alleges that the termination was caused by the exercise of his right to file a workers' compensation claim and was wrongful under A.R.S. § 23-1501(A)(3)(c)(iii). FAC, ¶¶ 33, 34.

## III. Discussion

In the SCA, Plaintiff Powell alleges that he was subjected to retaliation and termination in violation of the Arizona Employment Protection Act, A.R.S. § 23-1501,

- 4 -

which in pertinent part provides that:

> A. The public policy of this state is that:
>
> . . .
>
> > 3. An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred:
> >
> > . . .
> >
> > > c. The employer has terminated the employment relationship of an employee in retaliation for any of the following:
> > >
> > > . . .
> > >
> > > > (iii). The exercise of rights under the workers' compensation statutes prescribed in chapter 6 of this title.

A.R.S. § 23-1501(A)(3)(c)(iii.). To succeed on a claim under this section, Powell must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the two. *Matson v. Safeway*, NO. CV-12-8206-PCT-PGR, 2013 WL 6628257, at * 2 (D. Ariz. Dec. 17, 2013) (citing *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003)); *Levine v. TERROS, Inc.*, No. CV-08-1458-PHX-MHM, 2010 WL 864498, at *8 (D.Ariz. March 9, 2010). To establish causation, Powell must allege plausible facts that, if true, would show that his "filing a workers' compensation claim was a substantial factor in the decision to terminate his employment." *Lipsky v. Safety Nat'l Cas. Corp.* 2017 WL 443525, at *4 (Ariz. Ct. App. Feb. 2, 2017) (citing *Thompson v. Better-Bilt Aluminum Prods. Co.*, 187 Ariz. 121, 127, 927 P.2d 781, 787 (App. 1996)); *see also Knox v. United Rentals*

*Highway Technologies, Inc.*, No. CV-07-297-PHX-DKD, 2009 WL 806625, at *5 (D.Ariz. March 26, 2009) (explaining that plaintiff must show employer had a "retaliatory motive [that] played a part in the employment action").

As Defendant TMC acknowledges, Powell's FAC satisfies the first and second elements of a wrongful termination claim under Arizona Employment Protection Act by alleging that Powell filed for benefits under Arizona's workers' compensation statutes (the protected activity) and suffered an adverse employment action when he was subsequently terminated by TMC. TMC challenges Powell's claim only on the third prong requiring a causal link between the undertaking of the filing of the workers' compensation claim and his termination. TMC contends that Powell's wrongful termination claim should be dismissed because Powell has failed to allege a legally cognizable causal connection between his protected activity and his termination.

TMC's specific argument is that Powell offers vague allegations in the FAC in relation to the filing date of the worker's compensation claim and his termination. As Defendant TMC's exhibits establish, Powell was injured on February 17, 2015 and filed his workers' compensation claim eight days later, on February 25, 2015. Powell's employment was terminated almost 22 months later, on December 19, 2016. In light of the positive performance reviews Powell received after filing his workers' compensation claim and due to the 22 month gap between the filing of the claim and Powell's termination, TMC contends that Powell cannot establish causation between the filing of the claim and his termination.

However, as TMC recognizes, an employer's retaliatory intent can sometimes be

inferred where there is proximity in time between the employee's protected activity and the employer's adverse employment action. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002); *see also Tomkins v. Schmid Sys., Inc.*, No. CV-03-335-TUC-CKJ, 2006 WL 753155, at *3 (D. Ariz. Mar. 22, 2006) (denying summary judgment on causation where plaintiff filed his workers' compensation claim in November of 2002 and the employer terminated him in December 2002). In this case, TMC contends and the Court agrees, that the 22 months which elapsed between Powell's filing of his workers' compensation claim and his termination is well outside of the standards for proximity to infer causation between the two events.

In his response, Powell contends that the Court should not look at the February 25, 2015 filing date of his workers' compensation claim. Rather, he contends that his surgery in July of 2016 to address the injury, "and the corresponding request for worker's compensation benefits for surgery," is the protected activity upon which the temporal proximity of should be measured. If those facts are true, that would decrease the time between the protected activity (the surgery) and Powell's dismissal to approximately five months. TMC has at least two problems with this argument: first, Powell did not allege these facts in the FAC; and, second (and more importantly) TMC contends that Powell "never requested workers compensation benefits in July 2016, and there is no such written record of such a request at that time."

At the hearing, Powell did not dispute the fact that no workers' compensation claim was filed in relation to the surgery. Rather, he argued that it was at the time of the surgery in July 2016 that Mlawsky, who had become employed by TMC in May 2015,

became aware of his February 2015 injury and workers' compensation claim. Powell further alleges that upon his return to work on July 28, 2016, he noticed that Mlawsky's attitude toward him had changed dramatically. At the hearing, Powell contended that Mlawsky's changed attitude was caused, at least in part, by her becoming aware of the earlier workers' compensation claim. Under that set of facts, approximately five months elapsed between Mlawsky's discovery of the workers' compensation claim and Powell's termination in December 2016.

The contentions that Mlawsky discovered the workers' compensation claim in July 2016 and was then motivated by that discovery to terminate Powell do not appear in the FAC. Therefore, as it stands, the FAC fails to state a claim under A.R.S. § 23-1501(A)(3)(c)(iii.). Accordingly, the Court must decide whether to dismiss the claim outright or to allow Powell leave to amend.

Under the facts offered at the hearing, Powell reduced the temporal proximity between Mlawsky's discovery of the workers' compensation claim and his termination to five months. In the context of federal discrimination claims, "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing a Circuit Court case where a three month period is insufficient). Under the case law, five months does not appear to be generally accepted as "very close." *See Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (nine months not "very close"); *Villiarimo v. Aloha Island Air, Inc.*,

281 F.3d 1054, 1068 (9th Cir.2002) (court found no temporal proximity when termination occurred 10 months after plaintiff filed her complaint); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four month period insufficient); *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Washington v. California City Correction Center*, 871 F.Supp.2d 1010, 1029 (E.D. Cal. 2012) (six months "suggest causality was absent). *Cf. Arn v. News Media Group*, 175 Fed.Appx. 844 (9th Cir. 2006) (two month lapse sufficient); *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (seven week lapse sufficient); *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir.1989) (prima facie case of causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (sufficient evidence existed where adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended). Thus, even when the temporal proximity is shortened to five months, Powell's causation argument is very weak.

At this juncture of the case, however, the Court is not prepared to dismiss the SCA outright. Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a

district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999).

As discussed above, Powell has failed to sufficiently allege a causal link between the filing of his workers' compensation claim and his subsequent termination. Moreover, even when that window is shortened to five months, it is questionable that the existing authorities would support the inference of a causal link. However, there is some potential that "other evidence to support the inference of a retaliatory motive" might exist, *Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 895 (9th Cir.2005), and given the liberality with which leave to amend must be granted, the Court cannot entirely rule out that Powell can offer factual contentions in support of his retaliation claim that "have evidentiary support or, if specifically so identified, will likely have evidentiary support . . ." Fed. R. Civ. P. 11(b)(3). Therefore, Powell's SCA under A.R.S. § 23-1501(A)(3)(c)(iii) is dismissed with leave to amend, so that Powell, if he can do so within the rules, can more clearly explain the alleged causal relationship between his workers' compensation claim and his termination.

**IV. Order**

**Accordingly,**

**IT IS ORDERED** that TMC's Renewed Partial Motion to Dismiss (Doc. 19) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff is **granted leave to amend** the FAC.

If Plaintiff elects to amend, the Second Amended Complaint **shall be filed by May 10, 2018**.

Dated this 24th day of April, 2018.

_Jacqueline M. Rateau_
Honorable Jacqueline M. Rateau
United States Magistrate Judge